Good morning. Welcome to the Ninth Circuit. Judge Thomas and I would like to extend a special welcome to Judge Bennett from the United States District Court for the District of Maryland, who's sitting with us. We're very grateful for your willingness to come and help us with our work. Thank you very much, Judge Miller and Judge Thomas. It's an honor to be here, as always. We'll hear argument first this morning in Operating Engineers Local 3 v. Marathon Petroleum Company. Mr. Carter? Good morning, Your Honor. As you noted, I'm Arthur Carter. I'm here on behalf of Marathon for rebuttal. Okay. We'll just keep an eye on the clock. We'll try to remind you. Very good. Thank you so much. So the question before the District Court was whether to compel arbitration over a dispute involving covered versus uncovered work. And the District Court made a decision to compel arbitration, and in doing so, erred in three critical respects. One, it failed to cite or really follow the dictates of the Supreme Court's decision in granite construction as to the framework necessary to decide questions of arbitrability. Part and parcel of that failure to consider granite construction is that it applied a presumption of arbitrability to determine the dispute in question was subject to arbitration. And it failed to consider this issue of whether the excluded work took the dispute out of the scope of the arbitration clause, and instead characterized that question as involving a determination of the merits. And in doing so, sub salientio, it deferred to the arbitrator the question of is the dispute subject to arbitration or not, and didn't consider the facts as to whether the grievance really raised the question of work excluded from the scope of the agreement. Well, I mean, just to start with something very basic, you don't dispute that you're a party to the agreement. That's correct. Nor that the agreement contains an arbitration clause. That's not disputed. And the clause in 8.1 says that it covers any question arising out of during the term of the agreement involving its interpretation and application. So why isn't this question you know, they say this is covered work, you say it's not. That sounds like a question involving the interpretation and application of the agreement. So why doesn't that fall within the language of 8.1? Your Honor, it doesn't fall within the language of 8.1 because there are significant carve outs and exclusions in the PLA. So you look and you start with the definition of what the PLA covers. I believe it's at 1.4. And it describes covered work. And then you have all in Section 2 of the PLA a description of both covered work and excluded work. And there are several categories of excluded work. And probably what's most pertinent to the dispute here is quality assurance and quality control work. And so it follows that if work is excluded from the coverage of the PLA, the PLA has no force and effect or governance of that kind of work. And the arbitration clause in the grievance just has no force and effect. And that's the basic argument, is that because that work is excluded, the PLA is not operative. And therefore, it was incumbent upon the district court to determine whether or not this grievance involved excluded or noncovered work. It doesn't expressly include grievances about souls and material inspection, does it? No. The soils and materials inspection is included, Your Honor, as covered work. Yes. So, I mean, is it your view that there's something special about the particular covered work claim that you're making here? Or is your position really that any dispute about whether work is or is not covered would not be subject to arbitration? Because if it's not covered on your theory, it's just outside the scope of the agreement altogether. Your Honor, that's a good encapsulation of Marathon's position. If the work is excluded from coverage under the project labor agreement, it's not subject to grievance or arbitration. The project labor agreement has no force and effect over that work. Therefore, to determine whether a dispute over noncovered work is subject to arbitration is necessary. But that seems very hard to reconcile with 8.1, which says any question involving interpretation and application of the agreement. And it seems like what is the scope of the agreement? What work is covered seems like a pretty basic kind of question involving the interpretation and application of the agreement. Okay. So the scope of the agreement is clear. It excludes noncovered work. So then what your question suggests is that perhaps there's a factual question as to whether the work that the grievance is over falls within the scope of covered or uncovered work. But you can't get to a question of arbitration until there's a determination up front as does this grievance involve excluded or noncovered work. And that's consistent with... I mean, that's the... Well, but you always... That's what the dispute is. Well, you can always create a dispute by having conflicting arguments and conflicting contentions. That's salient in every contract dispute. One party says we have a breach and the other party says we don't. So how do you resolve the matter? Well, usually you send it to arbitration when there's an arbitration clause that says, you know, if there were, I mean, if 8.1 said, you know, any question involving interpretation and application, you know, except questions about noncovered work, you know, then you would have a stronger argument, I think. But the arbitration clause seems like it covers any dispute that the parties might have about the agreement, doesn't it? Well, I think that the teaching of granite construction is that a court must look at more than just the arbitration clause. It must assay the entire agreement to make a determination of whether the party's intended for particular disputes to be subject to arbitration. And the further teaching of granite construction, and it goes directly contrary to what the district court did here, is that even when there's no express exclusion in the arbitration clause, it's not appropriate to apply the presumption of arbitrability. A court still has to make an inquiry as to whether this is a dispute that the party's intended to arbitrate. And here you have these significant carve-outs of types of work that the project labor agreement does not apply to. And if the project labor agreement doesn't apply to that kind of work, it's simply not arbitrable. Therefore, the judicial inquiry is whether this grievance is raising an issue that's covered work or not covered work. And so the difference between what counsel may call as a conventional arbitration dispute in here is you have this big definition of things that are not subject to the project labor agreement. And the judicial responsibility in that circumstance is to actually make factual determinations. Is this a dispute that's being raised that falls outside the scope of the agreement? And if it is, then the next question is, is this the kind of dispute that the party's intended to be excluded from arbitration? And it's clear they did because the project labor agreement does not apply to excluded work. I can go on, and I'm happy to do that. And so the thing that's, I think, notable here is that the framework for deciding questions of arbitrability is not what is thought of as the conventional Steelworkers Trilogy framework. The framework has been set forth in some detail in granite construction over the steps that the courts are to apply and follow. And so if you take the situation we have here and the question that Your Honor posed about isn't it a question of is this excluded work or not, if the court doesn't decide that question of excluded work, what you are sub salientio doing is deferring to the arbitrator to decide the question of arbitrability. And the law is very clear that unless the parties have expressly agreed to do that and have delegated that authority to the arbitrator, it's for the courts to decide arbitrability, not the arbitrator. So I'm going to say a couple of other things because I think the argument here is pretty straightforward. I'm not going to really comment on the attorney's fees point of the appeal unless the court wants me to because we think the issue has been thoroughly briefed and there's a duel between the parties over what's the appropriate standard and what the district court did in this instance. With that, Your Honor — In effect, the district court applied both standards, did it not? I'm sorry, Your Honor, I didn't hear that. I say in effect in terms of whether it's the frivolous standards or the without justification standard or the attorney's fees, it seemed the district court applied both, did it not? It seemed. I thought so. Yeah. Yeah. Yeah. And we think obviously that the district court was correct in its ruling and there is a solid basis for arguing that the matter was not arbitrable. And it's based on this idea and this framework that the responsibility is on the court to decide whether the parties intended for the And I'll say one more thing about Granite Construction besides disdaining the idea that it's inappropriate to per se follow and apply a presumption of arbitrability is in assaying the question the court had before it, it looked at the entire agreement because it had to look at a question of contract formation and consider the entire context. And that's basically the point here is that the district court in ruling on the question of arbitrability had to look at this question of is this work excluded or included or not? Because if it's excluded, then it just follows as a matter of definition that the project labor agreement is not applicable and the matter cannot be subject to arbitration. I mean, do you think it would have been possible to write a contract that made the sort of dispute at issue here subject to arbitration? Make it subject to arbitration? Yeah. The parties decided, well, you know, there's, you know, we want the question of, you know, what work is in and what work is out to be decided by an arbitrator. Is that something they could have done? Certainly they can. And hindsight is always 20-20 in matters like this. And I think that I can't speak for the intentions of the union, but from a management perspective, they thought the job was done when they identified certain work that was excluded from the scope of the project labor agreement. So, for example, the PLA says that quality assurance, quality control work is not subject to disagreement. Management thought that that was done and dusted. That was the end of the story because it wasn't covered. Are there any further questions, Your Honors? It looks like there aren't. So if you want to reserve the rest of your time. I will do that. Yes. Thank you so much. Ms. Goldsmith. Good morning. I'm Eileen Goldsmith for the union. I want to start with this Court's decision in Westinghouse-Hanford, where this Court very clearly stated that in the context of arbitrability, the Court looks to the substantive provisions of the labor agreement only to see whether there are express exclusions from the arbitration clause. As the Court recognizes, Section 8.1 is a very broad, very standard arbitration clause in a labor agreement. It applies to any question involving the interpretation or application of the contract. There is no express exclusion in the arbitration clause or anywhere else in the PLA for disputes about whether or not particular work is covered. That's a bread-and-butter grievance under a PLA that labor lawyers see all the time. And that's arbitrable under a clause so broad as Section 8.1. The argument that the district court would have to have a trial on whether or not the work is covered before determining whether or not an arbitration about whether the work is covered should go forward is completely contrary to the Steelworkers Trilogy, to this describes how the Court applies the presumption of arbitrability in the context of a labor arbitration. And in that case, as counsel just mentioned, the dispute concerning the issue of contract formation, was there actually a labor contract with an arbitration clause in effect at the time of the dispute. And that's why the Court had to do that fact-finding on its own, because that threshold issue of contract formation wasn't something that the parties had clearly and unmistakably delegated to the arbitrator. But here, all you need for the question whether this covered work grievance is arbitrable is the union argues that it falls within the scope of soils and materials testing and inspection and is work within the craft jurisdiction of the union. That's within the scope of covered work under Section 2.1. Marathon's position is it falls within one of the exclusions. The exclusions involve many questions of interpretation and application of the agreement. 2.3.5 involves did the parties have this meeting to go over the union's signatory contractors and whether any of those were qualified specialty contractors? How did Marathon make its decision whether or not those contractors were qualified? Section 2.3.9, quality assurance, quality control, what does that mean? That involves questions of contract interpretation also. And then once the arbitrator does that interpretation, the arbitrator applies that interpretation to the facts as he or she finds them. I'd like to just turn for a few minutes to the fees. So the district court, we agree that the district court identified the correct standard, the without justification standard, but we think the court misapplied it and this court should reverse and award fees. But before you get to the application of it, why is without justification the right standard? That's, it's in this court's decision in alpha beta. Well, I mean, those words appear in the decision in alpha beta, but the core justification for fees, right, there's no statutory, there's no express statutory authorization for fees. That's correct. Right. So this all comes out of the sort of general, you know, exception to the American rule in cases where the losing party acted in bad faith or vexatiously. Would you agree with that? Yes. Yeah. Okay. So why, I mean, what is your understanding then of what without justification means? I mean, maybe you could elaborate on what you think. Sure. So first, starting with Western industrial maintenance, Western industrial maintenance kind of pulled out of bad faith, that it includes refusing to abide in this particular context of labor agreements, refusing to abide by an agreement to arbitrate in such a way that the plaintiff is forced to vindicate their clear legal rights through litigation. And in the context of labor arbitration, that's problematic because arbitration is the substitute for labor disputes, for labor strife, for the economic disruption that comes with all of that. And therefore, Congress and the courts in enforcing labor agreements to arbitrate, going back to Lincoln Mills, sees that those agreements play this very important function in this context that really need to have the weight behind them, that a party shouldn't be, shouldn't be abandoning that promise where that just causes delay and increased labor strife. So, then, you know, taking it from that, you know, perspective, it is not necessary for an argument to be, like, objectively frivolous, to be without justification. Without justification should have more weight to it, should deter parties from raising arguments that they really know they're going to lose. Even if they're colorable, they really know they're going to lose. They run headlong into the Steelworkers Trilogy, or they're really arguments about the merits of a grievance, which is the kind of argument we were hearing from counsel earlier, whether or not the work is covered work. That's something for the arbitrator to decide. And the courts have been saying that, going back to the Steelworkers Trilogy in 1960. So, they know that that is a, you know, a very hard uphill climb to persuade a court that there, that a court should decide the merits of a grievance. And so, I mean, but I take it you would, you don't dispute that it requires something more than just the fact that the losing side lost, right? The argument, it's not just that the argument fails to persuade the court. It has to be, you know, more wrong than that. I would agree it has to be more wrong than that, yes. But you think it's less wrong than, you know, being frivolous? Exactly. And the reason you have to find that middle ground there is to make this system of labor arbitration work the way it's supposed to. Because it's supposed to give parties a speedy resolution of disputes in exchange, in almost all cases, including in this case, for very broad no-strike protection, which, in this case, Marathon gets a tremendous benefit from. They get to run their project smoothly. They know there's going to be no labor disputes. All disputes get channeled into this arbitration procedure. And when that doesn't work the state, again, has to incur very significant expense to vindicate its rights simply to arbitrate. And I'll say, you know, by the time we have this arbitration, assuming we have it, the work is done. The work here has been lost. The people who would have done it didn't get to do it, and they're not going to get anything for that. So the parties have really lost the benefit of their bargain. Alito. I think you had started out by saying you were going to address how the district court, in your view, misapplied the without justification standard, and I took you away from that. Yes. So principally, the district court just said, I don't think this argument is frivolous, therefore, that's enough. And what I think the actual language was, it was that the defense offered an unpersuasive interpretation, and not a frivolous one, was exactly how it was worded, correct? Which essentially is borderline without justification, but didn't actually use those words. Yes. And we think that the mistake here is not to have recognized that, given the court clearly recognized that the principal argument here was a merits argument about whether or not the union wins the grievance, the court should have said that's without. The court said it was unpersuasive, that it didn't prevail, but it was unpersuasive. Well, Marathon did not prevail on that argument, and it was unpersuasive. And the district court made very short work of that argument on the merits, and found that Marathon's argument was essentially a merits, an argument about the merits of the grievance that should go to the arbitrator, because it involves interpretation and application of the agreement. And I would encourage this court to take a look at Texas Steel on this particular point, that when parties are essentially resisting arbitration based on arguments that would be decided by the arbitrator, that is inherently without justification. And what about their argument based on the California law, I think it was SB 54, if I'm remembering correctly? I mean, even if that argument might end up not being meritorious, but there's not case law directly on that point. I mean, why isn't that something that they have some justification for asserting? Well, if you look at how they asserted it, Your Honor, they asserted it below in a four-line footnote that said, oh, and there might be an SB 54 problem here. They did not actually develop any kind of argument that there could be a conflict between the particular language of the agreement that the union was trying to enforce and SB 54. They only — so the at minimum, the SB 54 argument was waived. But even if it were not waived, the — that argument fails even based on the case that they cited to the court in their briefs. So they didn't identify any provision of the PLA that the union was trying to enforce that actually conflicts with SB 54. They didn't have any argument to that effect. They only are suggesting that if the union wins this grievance, the arbitrator's award might in some way conflict with SB 54. That's an issue to leave to the arbitrator. The arbitrator will hear those arguments about SB 54, and the arbitrator's award could very well not conflict with SB 54. But even if it does, then Marathon's remedy in that instance is to seek vacator of the award. And that's — again, that's the Alpha-Beta case. That's it from this Court. So we don't think the SB 54 argument would in any way serve as justification in this case. Unless the Court has anything else for me, we'll submit. Thank you. Thank you. Mr. Carter, rebuttal? First, with respect to Granite Rock, it is manifestly clear from the decision that the Supreme Court said you do not apply presumptions of arbitrability as a substitute for the Court making an arbitrability decision. And it expressly said — and one place it said it is Note 8 at 561 U.S. 301 — that even when there is no express exclusion in the arbitration clause, the courts nevertheless must proceed to interpret whether the dispute in question in the arbitration clause is applicable to it. And the reason for that — and it's a common thread in the analysis of that case, and it also relies on AT&T technologies — is that arbitration is a matter of contract, and the judicial job in the first instance is to see whether the parties intended that the dispute be covered by arbitration. The problem you have here with — I'll call it the conventional argument — is the union said we have an arbitration clause, and we allege there is a dispute under the arbitration clause, and therefore it follows the matter is subject to arbitration. And that just elides over several important steps to decide whether the parties agree to submit to arbitration or not. The second point about granite construction is that there was a formation issue, but a fair reading of the case shows that the court said we have to assay this entire agreement and this course of conduct between the parties to see whether or not they intended that their dispute be subject to arbitration. And so it's — and the third point is that because you have a mechanism operating here where you have an exclusion, if the work is excluded, the PLA is not operative. And so that can't be the dispute that's in arbitration. That's part of that threshold determination that the court would need to make to decide whether the parties intended to arbitrate the dispute or not. That's why I said earlier in my initial argument that we have a sub silentio effort here to decide when the court said, you know, this is just a merits issue, is a deference to the arbitrator to decide what really is an arbitrability question because if the arbitrator concludes that this work is not covered, he's concluding what the scope of the arbitration clause is. And that's a step that needs to take place at the judicial level. And as far as how difficult or how complicated it is, it just depends on what the particulars are. But it's no reason for that not to take place at the judicial level given the established concept that arbitrability, substantive arbitrability, unless the parties have delegated otherwise, is for the courts in the first instance. Beyond that point, it just bears a bit more emphasis, I'm just about done, is it's a conflating of arbitrability and merits to say that this is a merits determination. Thank you, Your Honors. Thank you, counsel. Thank both counsel for their helpful arguments and the cases submitted.
judges: THOMAS, MILLER, Bennett